Biedie Amsterdam, J.
Defendants, Family Games, Inc., Ray Larsen Associates, Inc. and Crestwood Advertising, Inc. move for summary judgment dismissing the plaintiff’s complaint for failure to state, a cause of action pursuant to sections 50 .and 51 *789 of the Civil Rights Law. Plaintiff, Howard Hughes, opposes and cross-moves for summary judgment upon the first cause of action.
The present controversy arises from the marketing and distribution of an adult educational career game entitled ‘ ‘ The Howard Hughes Game.” Plaintiff neither consented to the use of his name nor his biographical data. The frontispiece to the exhibit before this court clearly states that fact and same is not denied by defendants, but rather affirmed. Apparently, the success or failure of either party to this action depends upon how this court chooses to characterize “ The Howard Hughes Game.” Is it free from proscription by sections 50 and 51 of the Civil Rights Law because it merely restates in another form the events of the Hughes career? Can it logically be considered another form of distributive publication as any biography, magazine article, or motion picture would be; or, on the other hand, should the marketing and distribution of ‘ ‘ the game ’ ’ be characterized as an act of appropriation? The complaint consists of two causes of action only the first of which is asserted against the defendants by Hughes. Rosemont Enterprises, Inc., by virtue of an exclusive assignment of the right to exploit the Hughes name and personality, asserts the second cause of action for injunctive relief. The answer denies the material allegations of the complaint and alleges as an affirmative defense: that no cause of action is stated; that plaintiff Hughes had not consented to the present action and that there is no jurisdiction over the defendant Urban Systems, Inc. Peripherally, defendants in their moving papers allege that Hughes by virtue of the assignment had waived his right to seek injunctive relief.
This court by an earlier decision established that plaintiff, a person of well-publicized exploits and achievement, had no statutory or common-law right to the exclusive commercial exploitation of his personality in biographical form (Rosemont Enterprises v. Random House, 58 Misc 2d 1, affd. without opn. 12 A D 2d 892). The courts, however, have permitted recovery where a person’s name (Manger v. Kree Institute of Electrolysis, 233 F. 2d 5), picture (Flores v. Mosler Safe Co., 7 N Y 2d 276) or other likeness has been used without consent to advertise the defendant’s product or to accompany an article sold. The present situation, however, is somewhat unique in that the commodity or article sold is closely identifiable with the major events in plaintiff’s career.
There is a paucity of decisions having to do with the present peculiar set of facts. Defendants rely most heavily on Paulsen *790 v. Personality Posters (59 Misc 2d 444) where this court determined that plaintiff, a well-known comedian, could not enjoin the defendant from marketing a poster which was derived substantially from a photograph owned by him but issued to defendant. Similar to the present situation Paulsen never consented to the photograph being used for a poster.
However, this court treated the poster as an alternate form of distributive publication and exempted it from the proscription of the Civil Eights Law (Paulsen v. Personality Posters, 59 Misc 2d 444, 448, supra). The Paulsen case is unique to its facts and must be so considered.
The instant action is quite clearly premised upon an appropriation for commercial exploitation of plaintiff’s property rights in his name and career rather than upon an injury to feelings. There is no question but that a celebrity has a legitimate proprietary interest in his public personality. He must be considered as having invested years of practice and competition in a public personality which eventually may reach marketable status. That identity is a fruit of his labors and a type of property (Uhlaender v. Henricksen, 316 F. Supp. 1277; Palmer v. Schonhorn Enterprises, 96 N. J. Super. 72). The question apparently is where does one draw the line between the right of the public to ‘ ‘ know ’ ’ and an act of appropriation. In reality, defendants are not disseminating news. They are not educating the public as to the achievements of Howard Hughes. They are selling a commodity, a commercial product, an entertaining game of chance, the outcome of which is determined by maneuvering tokens on a game board by the throw of the dice. The use of plaintiff’s name, biographical data etc. in this context is not legitimate to the public interest. It is merely the medium used to market a commodity familiar to us all in its varied types and forms. Use for such purposes is an act of appropriation of those property rights belonging to plaintiff, Hughes. (Uhlaender v. Henricksen, supra.) Although that conclusion - is reached in the present circumstances, the court does not wish or intend to formulate a hard and fast rule. As the Paulsen case (supra) would indicate, this area of the law is plastic. Each case must be decided by weighing conflicting policies; the public interest in free dissemination of information, against the interest in the preservation of inviolate personality and property rights. Among the relevant factors in such decisions are the media used, the nature of the subject matter, and the extent of the actual invasion of privacy (see, generally, 47 N. T, Jur., Privacy, § 27; Prosser, Torts [3d ed.] *791 Bight of Privacy, § 112). The court however in the present situation has no difficulty in finding that the marketing and publication of the game are violative of the Civil Bights Law. Plaintiffs, therefore, have not only stated a cause of action, but are entitled to relief.
Turning toward the tangential issues, this court cannot find from the proof adduced upon this application any evidence to support the allegation that Hughes had not consented to the institution of this action. A similar argument was proposed to this court in Rosemont Enterprises v. Choppy Prods. (N. Y. L. J., Dec. 6, 1972, p. 18, col. 3) and rejected. It appears an afterthought, a straw dog, asserted more for delay than for legitimate legal purpose. Lastly, it must be said that Hughes assignment to Bosemont Enterprises, Inc. does not deprive him of a cause of action. Plaintiff is free to protect himself from the exploitation of his name and likeness against all the world except Bosemont Enterprises, Inc. It is only between them will that assignment constitute a defense to a similar lawsuit. A traverse, however, is required to properly determine if the court has jurisdiction over -the defendant Urban Systems, Inc. That issue cannot be decided on the papers presently before this court.
Accordingly, defendants’ motion for summary judgment is denied. Plaintiff’s cross motion for summary judgment is granted to the extent set forth herein.